IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

CASE NO. 15-02855 (ESL)

WILFREDO ENRIQUE ARIAS NUSSA

CHAPTER 13

Debtor

OPINION AND ORDER

This case is before the court upon the *Motion for Summary Judgment* (Docket No. 84) filed by creditor Ana Cristina Montaner Rodriguez (hereinafter referred to as "Ms. Montaner") and the *Reply* thereto filed by the Debtor (Docket No. 88). Also before the court is *Joint Pre-Trial Report* filed by the Debtor and Ms. Montaner (hereinafter referred to as the "Parties") (Docket No. 76). Ms. Montaner argues that she is a secured creditor in the amount of $122,700.00 (Claims Register, proof of claim #10-3). Moreover, she sustains that the basis for her claim is the Debtor's (her ex-spouse) breach of the stipulations reached between the Parties as part of their divorce petition which were incorporated into the State Court's Judgment granting the Parties' consensual divorce petition. Ms. Montaner argues that her claim is secured by her pre-existing interest and/or equitable lien over the property located at La Floresta, Apt. 1042, Road 831, Bayamón, Puerto Rico (hereinafter referred to as the "Real Property") which the Parties purchased during their marriage. The Debtor in his *Reply* does not contest that Ms. Montaner has a claim secured by a judicial lien but instead argues that the judicial lien can be avoided pursuant to 11 U.S.C. §522(f)(1) because it impairs his homestead exemption.

For the reasons stated below, the *Motion for Summary Judgment* (Docket No. 84) filed by Ms. Montaner is hereby denied.

Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(B).

-1-

Procedural Background

The Debtor filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on April 17, 2015 (Docket No. 1). In *Schedule A- Real Property*, the Debtor listed the Real Property as having a current value as $142,500.00 (Docket No. 1, p. 23). The Real Property is encumbered by two mortgages for a total of $122,700 (Schedule D, Docket No. 1, p.28). The Debtor included Ms. Montaner as a co-debtor of mortgages secured by the Real Property in *Schedule H* but did not list her as a co-owner in *Schedule A*. (Docket No. 1, pp.23, 34). The deadline to file proof of claims for non-governmental entities was August, 17, 2015 (Docket No. 6). On June, 17, 2015, Ms. Montaner filed a proof of claim in the amount of $142,500.00 claiming $122,700.00 as secured (proof of claim #10-1). The only evidence attached to proof of claim #10-1 was a loan verification statement from Doral Bank.

On June, 18, 2015, Ms. Montaner, appearing pro se, filed an *Explanatory Motion* (Docket No. 12) summarizing the stipulations which she alleged Debtor did not comply with and the status of the State Court Case No. D DI2010-2452[1]. She also requested to be allowed "to continue legal efforts, and/or coordinating meetings with Arias Nussa and his legal representatives in order to market the [Real Property] and promote its sale." (Docket No. 12, p. 2). Ms. Montaner declared that the Debtor had breached the stipulations related to the Real Property which required him to make the monthly mortgage payments and to attempt to re-finance the loan secured by the Real Property. She also stated that in exchange for being released from the mortgage, she agreed to transfer her fifty percent ownership interest to the Debtor. On June 23, 2015, the court entered an *Order* granting the Debtor, the Chapter 13 trustee and all parties in interest fourteen days to reply and/or oppose the motion filed by Ms. Montaner at Docket No.12 (Docket No. 15).

On June 25, 2015, the Chapter 13 Trustee filed an objection to proof of claim #10 by Ms. Montaner arguing that it fails to provide evidence of her security interest as required by

---

[1] Ms. Montaner attached two motions for contempt filed in the State Court case dated January 9, 2015 and February 18, 2015. (Docket No. 12, pp. 5-8).

FRBP 3001(d) (Docket No. 16). The Chapter 13 Trustee also argued that there was an inconsistency in the amounts claimed by Ms. Montaner. On June 30, 2015, the Chapter 13 Trustee requested an extension of twenty-one (21) after the Debtor files his response to Docket No. 12 to comply with the *Order* at Docket No. 15 (Docket No. 19) which was granted on July 9, 2015 (Docket No. 24). On July 3, 2015, the Debtor requested an extension of twenty eight (28) days to comply with the *Order* at Docket No. 15 (Docket No. 21) which was granted on July 7, 2015 (Docket No. 23).

Thereafter on July 23, 2015, the Chapter 13 Trustee filed an amended objection to proof of claim #10 arguing that: (i) Ms. Montaner has not demonstrated her right to payment pursuant to Section 101(5)(A); and (ii) the amounts in the proof of claim are inconsistent (Docket No. 27). On July 31, 2015, the Debtor filed an objection to proof of claim #10 adopting the arguments made by the Chapter 13 Trustee and declaring that the proof of claim is not supported by proper evidence (Docket No. 31).

On August 3, 2015, the Debtor filed *Debtor's Reply and Opposition to Explanatory Motion Filed by Claimant Ana Cristina Montaner* arguing that Ms. Montaner is requesting relief which cannot be granted by the court as she "is not a creditor but a co-debtor with Debtor" (Docket No. 32, p.1, ¶5). In addition, the Debtor declares that through his bankruptcy and Chapter 13 Plan he "will make the necessary payments to the mortgage loan and eventually, after achieving a better economic position, refinance the property in order to release Ms. Montaner as a co-debtor in the Mortgage loan" (Docket No. 32, p.2, ¶9). On August 24, 2015, the Chapter 13 Trustee filed the *Trustee's Motion to Comply with Order Dkt. 24* arguing that: (i) Ms. Montaner would have to seek relief from the automatic stay to continue the state court actions; (ii) since Ms. Montaner "does not allege to have an ownership right over the [Real Property], thus, it is not clear why she has a right to demand the sale of the property"; and (iii) it is premature to state his position as to the refinancing of the mortgage loans because the Debtor has not filed a motion under Section 364 (Docket No. 42). On August 31, 2015, the court entered an *Order* scheduling a hearing for October 28, 2015, to consider the *Explanatory*

-3-

*Motion* filed by Ms. Montaner and the Debtor and Chapter 13 Trustee's replies thereto (Docket No. 45).

On September 4, 2015, the court entered an *Order* granting as unopposed the Chapter 13 Trustee's amended objection to proof of claim #10 and the Debtor's objection to proof of claim #10 (Docket No. 47). On October 14, 2015[2], Ms. Montaner filed an amended proof of claim in the amount of $122,700 claiming that it is fully secured (proof of claim #10-2). In addition, she stated that the basis for the claim is the divorce decree in the State Court Case No. DDI2010-2452 and declared that the basis for the perfection was a judicial lien. Moreover, she attached the Judgment and the Divorce Petition which includes the stipulations reached by the Parties as part of the divorce proceedings. Subsequently, on October 27, 2015, Ms. Montaner filed a third amended proof of claim which included an *Amended Attachment to Amended Proof of Claim 10* (proof of claim #10-3).

On October 28, 2015, during the hearing held on confirmation and other contested matters, the court granted Ms. Montaner fourteen (14) days to move for reconsideration of the *Order* disallowing proof of claim #10 (Docket Nos. 55 (*Audio File*) and 56 (*Minute Entry*)).

On November 11, 2015, Ms. Montaner filed a *Motion for Reconsideration* pursuant to Section 502(j) and FRBP 3008 arguing that: (i) Congress has recognized that "in the course of a separation or divorce spouses could incur in new debts that are claimable against a former spouse in a bankruptcy proceeding" and that those debts were codified in Sections 523(a)(5) and 523(a)(15); (ii) "a former spouse has a claim based on an obligation originated in accordance to nonbankruptcy law that was incurred by a debtor as part of a divorce proceeding or marital separation settlement" and; (iii) that "a claim exists also, if the claimant has a remedy under nonbankruptcy law to execute and enforce its claim, such as requesting the state court to held [sic] a the noncompliance party in contempt." (Docket No. 58). Ms. Montaner cites several cases including but not limited to In re Wodark, 425 B.R. 834 (10th Cir. BAP (Colo.) 2010); In

---

[2] On October 14, 2015, attorney Luis Francisco Zayas Marxuach filed a *Motion for Appearance of Counsel* on behalf of Ms. Montaner (Docket No. 51).

-4-

re Gibson, 219 B.R. 195 (B.A.P. 6th Cir. 1998); In re Brown, No. 11-19048-JNF, 2012 WL 10191, at *1 (Bankr. D. Mass. Jan. 3, 2012); and In re Burckhalter, 389 B.R. 185, 186 (Bankr. D. Colo. 2008). She sustains that during the course of the divorce proceeding the Debtor incurred in four new obligations: (1) to make the monthly mortgage payments in the amount of $914.13, (2) to perform all necessary transactions with the mortgagor to release her from the mortgage within one year, (3) to inform the State Court of all transactions and efforts made to release her from the mortgage, and (4) to "pay and release Ms. Montaner of, all joint debts in the amount of $29,809.53, particularly the American Express credit card number ending with 88054 in the amount of $18,835.20." (Docket No. 58, p. 13, ¶¶46-48)[3]. Thus, Ms. Montaner argues that she has a claim against the Debtor because he failed to comply with those obligations which were incorporated into the State Court Judgment. In addition, she argues her claim is secured "by her own share of the apartment, since she could request the sale of the apartment to pay her share of the mortgage and be release [sic] from it." (Docket No. 58, p. 14, ¶54). Finally, she argues her claim "falls under [the] definition of a claim as per 11 U.S.C. §101(5), since it is one that Debtor "incurred in the course of a divorce decree" as defined in Section 523(a)(15), as recognized by Congress." (Docket No. 58, p. 15, ¶60).

After several procedural events[4], on January 27, 2016, the Debtor filed *Debtor's Reply and Opposition to Motion for Reconsideration* arguing that Ms. Montaner does not have a claim since she does not have a right to payment pursuant to Section 101(5). In addition, he argues that "the debtor's obligation was not to satisfy at once the full mortgage balance as it seems to be requested by the claimant in her proof of claim no. 10" but that "[h]is obligation related to payment is to keep current with his mortgage payments until the release of claimant from the mortgage debt was granted." (Docket No. 72, p. 3, ¶10). Thus, the Debtor argues that Ms. Montaner has not shown that "the debtor incurred in a debt in her favor that satisfies the

---

[3] Banco Popular de Puerto Rico also filed proofs of claims as to these joints debts (the mortgage loans and credit card bills). See proofs of claims #1, #4, #7 and #11-2.

[4] See Docket Nos. 60, 61, 63, 64 and 65. On December 28, 2015, the court entered an *Order* granting the Debtor sixty (60) days to reply to the *Motion for Reconsideration* but advancing that it would "consider the matter on the merits, and not as a default order for failure to timely respond." (Docket No. 65).

qualifying language of sec. 523(a)(15)." (Docket No. 72, p. 4, ¶14). As to the payment of the joint debts, the Debtor sustains that once again "the intention of the debtor was to release Ms. Montaner from all joints debts as was stipulated". (Docket No. 72, p. 5, ¶16). The Debtor also sustains that the "[c]laimant does not explain in her motion the rationale behind the classification of the alleged debts in her favor as *secured*. Debtor is not aware of any legal grounds which may support that treatment." (Docket No. 72, p. 4, n.8). Moreover, he argues that Ms. Montaner's claim is not secured because the Divorce Judgment is not a lien as it was not recorded in the Registry of Property as required by Art. 1330 of the Puerto Rico Civil Code. The Debtor also sustains that Ms. Montaner does not meet the definition of a judgment lien creditor. Thus, the Debtor requests that that if the court allows the portion in proof of claim #10 related to the payment of the joint of debts, that it be allowed as unsecured claim. Finally, as to the amounts claimed relating to the stipulations reached as to the Real Property, the Debtor argues that it should not be allowed as "it is a personal obligation to perform that is still being addressed by the debtor within his bankruptcy petition and not a claim which is entitled to a right to payment pursuant to Section 101(5)(A)." (Docket No. 72, p. 7).

On February 10, 2016, the court entered and *Order and Notice* scheduling a preliminary pretrial and scheduling conference on March 22, 2016 (Docket No. 73).  On March 15, 2016, the Parties filed a *Joint PreTrial Report* (Docket No. 76).  During the hearing held on March 22, 2016, the court granted the Parties a period of sixty (60) days to file cross-motions for summary judgment on the issue of whether proof of claim #10-3 is secured or not and stated that if Ms. Montaner moves the court within thirty (30) days, then the Debtor has twenty-one (21) days to reply (Docket Nos. 80 (*Minute Entry*) and 81 (*Audio File*)). The court also ordered the Debtor to inform the court within fourteen (14) days on any efforts to relieve Ms. Montaner from the mortgage obligation.

On May 2, 2016, Ms. Montaner filed a *Motion for Summary Judgment* in which she sustains that "the courts have recognized that ex-spouses have an interests [*sic*] in the marital property, and they should have a remedy to enforce a preexisting right in the property either by

a security interest, equitable lien, judicial lien or equitable mortgage." (Docket No. 84, p.11, ¶17). Ms. Montaner argues that she either has a lien or equitable lien created by the divorce decree since it "conve[yed] the property to the debtor Ms. Arias that was encumbered by his obligation to release creditor Mrs. Montaner as payment for her share in the apartment" and that "Mr. Arias would have to satisfy the conditions in the stipulations by release [*sic*] Mrs. Montaner from the mortgage to own the apartment." (Docket No. 84, p. 14, ¶32). In the alternative, Ms. Montaner argues that she "retained her preexisting interests [in the Real Property] until Mr. Arias releases her from the mortgage, establishing an equitable lien to prevent any unjust enrichment, or a security interest, to protect Ms. Montaner's pre-existing interest." (Docket No. 84, p. 14, ¶34). Accordingly, she sustains that either she has an "interest securing her claim until the stipulated conditions are met" pursuant to Boyd v. Robinson, 741 F.2d 1112, 1114–15 (8th Cir. 1984) or an equitable lien if the court applies In re Donahue, 862 F.2d 259, 266 (10th Cir. 1988). (Docket No. 84, p. 15, ¶¶35, 36).

On May 21, 2015, the Debtor requested an extension of ten (10) days to file a reply to the *Motion for Summary Judgment* (Docket No. 85) and the same was granted on May 24, 2016 (Docket No. 86). On May 31, 2016, the Debtor filed *Debtor's Reply to Motion for Summary Judgment* (Docket No. 88). The Debtor agrees that "Mrs. Montaner's claim is potentially secured by a judicial lien that is fixed on an interest of the debtor in the real estate property". (Docket No. 88, p.5, ¶21). Hence, he argues that the true controversy is "whether the judicial lien impairs the debtor's entitlement to the homestead exemption as provided in 11 U.S.C. sec. 522(d)(1)." (Docket No. 88, p.5, ¶21). Accordingly, he argues that the judicial lien impairs the Debtor's exemption and should be avoided pursuant to Section 522(f). In the alternative, the Debtor sustains that there is no equity in the Real Property to "which the claimant can attach her judicial lien." (Docket No. 88, p.9, ¶27)

After considering the totality of the record, the following facts are uncontested (Docket Nos. 76, 84, 88):

Material Uncontested Facts

1. On June, 24, 2011, Ms. Montaner and the Debtor filed a Divorce Petition before the Puerto Rico Court of First Instance of Bayamon (hereinafter referred to as the "State Court"), Case No. D DI2010-2452 (Docket No. 76).

2. The parties owned an equal share of the Real Property. (Docket No. 76).

3. The Real Property had a value of $160,000.00 at the time the Divorce Petition was filed (Docket No. 76).

4. As part of their Divorce Petition the Parties agreed to the following stipulations:

   a. Ms. Montaner conceded her fifty (50) percent share of the Real Property in consideration that the Debtor would continue to make the mortgage payments in the amount of $914.13 and would assume her share of the mortgage debt by seeking that Ms. Montaner be released from the mortgage obligation.
   b. The Debtor had one (1) year to release Ms. Montaner from the mortgage and if the transaction could not be completed within the year the Debtor has to render a report of his efforts every six (6) months to the State Court until the release is obtained.
   c. The Debtor will pay all joint debts in the amount of $59,619.06, including an American Express credit card account in the amount of $18,835.20, releasing Ms. Montaner from such debts and holding her harmless from the payment of any joint debts. (Docket No. 76).

5. On June 27, 2011, the State Court entered a marital dissolution Judgment which incorporated the stipulations reached by the Parties. (Docket No. 76)

6. On January 9, 2015, Ms. Montaner filed a Motion for Contempt in the State Court requesting enforcement of the Judgment. (Docket Nos. 12 and 76).

7. On January 14, 2015, the State Court entered an Order ordering the Debtor to present evidence of: the mortgage payments, any efforts that have been made to release Ms. Montaner from the mortgage, and of payments of the credit card debts. (Docket No. 76).

8. On February 18, 2015, Ms. Montaner filed a Second Motion in the State Court requesting the sale of the Real Property. (Docket No. 76).

9. On February 23, 2015, the State Court entered an order scheduling a contempt hearing as a result of the Debtor's non-compliance with the Judgment and previous orders. (Docket No. 76).

10. On April 17, 2015, the Debtor a bankruptcy petition under Chapter 13 of the Bankruptcy Code on April 17, 2015 (Docket No.1).

11. On June, 17, 2015, Ms. Montaner filed a proof of claim in the amount of $142,500.00 claiming $122,700.00 as secured (proof of claim #10-1).

12. On September 4, 2015, the court entered an Order granting as unopposed the Chapter 13 Trustee's amended objection to proof of claim #10 and the Debtor's objection to proof of claim #10. (Docket No. 47).

13. On October 14, 2015, Ms. Montaner filed an amended proof of claim in the amount of $122,700 and claiming that it is fully secured (proof of claim #10-2).

14. On October 27, 2015, Ms. Montaner filed a third amended proof of claim which included an *Amended Attachment to Amended Proof of Claim 10* (proof of claim #10-3).

## Issues

The first issue before the court is whether Ms. Montaner has a claim pursuant to Section 101(5). If the court finds that Ms. Montaner has a valid claim and is therefore a creditor, it must then determine whether the claim is secured or unsecured.

## Applicable Law and Analysis

*(A) Standard for Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment should be entered "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." Wright, Miller & Kane, Federal Practice and Procedure, 3d, Vol 10A, § 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment.  Adickes v. Kress & Co., 398 U.S. 144, 157 (1970).  See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991).  It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial.  Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).  The moving party cannot prevail if any essential element of its claim or defense requires trial.  López, 938 F.2d at 1516.  In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case.  Celotex, 477 U.S. at 325.  See also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11.  In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment.  Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987).  See also, Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464.  A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party.  Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made.  López, 938 F.2d at 1517.  The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden.  Adickes, 398 U.S. at 159.

The court finds that the relevant uncontested facts show that there are no genuine issues as to any material fact, and the issue before the court is a question of law, that is, whether Ms. Montaner has a claim and whether the claim is secured.

*(B) Definition of the term "claim" pursuant to Section 101(5)*

A creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). Section 101(5) defines the term "claim" as a:

> **"(A)** right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> **(B)** right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5).

Thus, the term "claim" includes either a "right to payment" or a "right to an equitable remedy" for a debtor's breach of performance so long as the breach gives rise to a right to payment. Moreover, "[b]ecause Congress intended the term "claim" to be expansive, the Supreme Court has directed that the term be give the "broadest available definition" to permit the most comprehensive relief in the bankruptcy case." Hon Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual § 6:4 (5th ed.2015–1).

In addition, the term "debt" is defined as a "liability on a claim."11 U.S.C. § 101(12). Thus, "a creditor has a "claim" against the debtor and the debtor owes a "debt" to the creditor." Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶101.12 (16th ed. 2015). Furthermore, "[a]bsent an overriding federal interest, the existence of a claim in bankruptcy is generally determined by state law." In re Melillo, 392 B.R. 1, 4 (B.A.P. 1st Cir. 2008), quoting Securities Exchange Comm'n v. Cross (In Re Cross), 218 B.R. 76, 78 (9th Cir. BAP 1998).

In the instant case, this court must determine whether the obligations to pay joint debts to third parties arising from the stipulations reached between the Parties as part of their divorce petition and incorporated into the State Court's Judgment give rise to a "debt."

*(C)* *Section 523(a)(15)*

Section 523(a)(15) "governs the dischargeability on property settlements debts as opposed to support obligations." Alan N. Resnick & Henry J. Sommer, 4 <u>Collier on Bankruptcy</u> ¶523.23 (16th ed. 2015). Although Section 523(a)(15) specifically relates to an exception to a discharge (which is not the controversy before the court in the instant case) a discussion of said section is helpful in determining whether Ms. Montaner has a "claim" against the Debtor[5].

A property settlement debt is a debt owed "to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5)[6] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit." 11 U.S.C. § 523(a)(15).

In addition, "when a marital settlement agreement includes an express "hold harmless" provision, the requirements of subsection (a)(15) are satisfied and the debtor's obligation to the nondebtor spouse or child is nondischargeable." Alan N. Resnick & Henry J. Sommer, 4 <u>Collier on Bankruptcy</u> ¶523.23 (16th ed. 2015). This is so as courts have found that the obligation to "hold harmless" or indemnify a former spouse from payment of a joint debt creates a new debt. <u>See</u>, <u>In re Jaeger-Jacobs</u>, 490 B.R. 352, 357 (Bankr. E.D. Wis. 2013) ("A provision in a

---

[5] The court notes that this is a Chapter 13 case and that pursuant to 1328(a)(2) debts arising from property settlements are not excepted from the discharge in a Chapter 13 case. <u>See</u> 11 U.S.C. §§ 523(a)(15) and 1328(a)(2); <u>In re Perez</u>, , 2013 WL 959842, at *9 (Bankr. D.P.R. Mar. 12, 2013)("Property settlements are only dischargeable in a Chapter 13 case after completion of all plan payments."); <u>In re Brown</u>, 2012 WL 10191, at *1 (Bankr. D. Mass. Jan. 3, 2012)("Debts of the kind listed in 11 U.S.C. § 523(a)(15), are dischargeable in Chapter 13 cases, see 11 U.S.C. 1328(a)(2), but not in Chapter 7 cases.").

[6] Section 523(a)(5) makes reference to domestic support obligations.11 U.S.C. §523(a)(5). The term domestic support obligation is defined in Section 101(14A). 11 U.S.C. §101(14A).

-13-

divorce decree to hold harmless or indemnify a spouse for joint obligations incurred during a marriage creates a "new" debt, running solely between the former spouses."). However, the debtor's obligation to pay creditors is discharged, and the non-filing spouse is still liable to creditors for that joint debt. Nevertheless, what is not discharged (unless Section 1328(a)(2) applies as in the instant case) is the debtor's obligation to hold the spouse harmless and thus the non-filing spouse may seek reimbursement from the debtor for payment of those debts. As the Court explained in In re Clark, 207 B.R. 651, 657 (Bankr. E.D. Mo. 1997):

> "The debts owed to the joint creditors are discharged as to the debtor only. The obligation that is not dischargeable in these situations is a debtor's responsibility to hold his non-debtor, ex-spouse harmless. The non-debtor ex-spouse may look to the debtor for reimbursement pursuant to any nondischargeable "hold harmless" obligations, but the non-debtor ex-spouse is not immune from pursuit by the primary joint creditors."

The courts are split on whether a divorce settlement decree or judgment that contains an obligation to pay a debt to a third party but that does not include an express "hold harmless" provision gives rise to a nondischargeable debt under Section 523(a)(15). In re Read, 2015 WL 4178728, at *4 (Bankr. D.R.I. July 10, 2015) (discussing split among courts). Some courts have found that obligations to pay debts to third parties arising from a divorce settlement are debts even if the stipulation or divorce decree did not contain an indemnity or hold-harmless provision as long as non-bankruptcy state law provides the ex-spouse with a remedy to enforce these obligations. See In re Wodark, 425 B.R. 834, 840 (10th Cir. BAP 2010); Gibson v. Gibson (In re Gibson), 219 B.R. 195, 205 (B.A.P. 6th Cir. 1998); In re Brown, 2012 WL 10191, at *3 (Bankr. D. Mass. Jan. 3, 2012); In re Burckhalter, 389 B.R. 185, 190 (Bankr. D. Colo. 2008); In re Shreffler, 319 B.R. 113, 120 (Bankr. W.D. Pa. 2004). For example, in In re Wordark, the Bankruptcy Appellate Panel for the Eight Circuit concluded that "[b]ecause state law affords [the ex-spouse] a means of enforcing the separation agreement as part of a judgment, he has a right to

-14-

payment that is a "debt" that Glennette incurred in connection with the separation agreement." In re Wodark, 425 B.R. 834 at 840; see also In re Burckhalter, 389 B.R. 185, 190 (Bankr. D. Colo. 2008)("Thus, the Court concludes that, so long as Colorado law gives the Plaintiff a right to enforce the allocation of marital debt delineated in the Separation Agreement, and that enforcement mechanism "gives rise to a right to payment," then the debtor has incurred a debt in the course of his divorce proceeding that is nondischargeable under § 523(a)(15).").

Conversely, other courts have held that obligations to pay debts to third parties are not "debts" pursuant to Section 523(a)(15) if the divorce agreement or stipulation did not include an indemnity or hold-harmless clause. In re Owens, 191 B.R. 669, 674 (Bankr. E.D. Ky. 1996); In re Stegall, 188 B.R. 597, 598 (Bankr. W.D. Mo. 1995). Moreover, other courts have held that obligations to pay debts to a third party arising from a property settlement are not "debts" pursuant to Section 523(a)(15). See In re Proyect, 503 B.R. 765, 776 (Bankr. N.D. Ga. 2013).

In the instant case the underlying obligations arising from the stipulations reached between the Parties as part of their divorce and incorporated into the Judgment entered by the State Court, which according to Ms. Montaner, give rise to a valid "claim" can be divided in two: (1) the obligations relating to the Real Property and (2) the obligations relating to the payment of the joint debts including the payment of the American Express credit card debt. Thus, the issue before the court is whether these obligations are "debts" which give rise to a valid claim.

The Debtor does not contest that the stipulation incorporated into the Judgment granting the Parties divorce petition includes a "hold harmless" clause as to the Debtor's obligation to pay the credit card bills. Thus, the Debtor has incurred in a "debt" and Ms. Montaner has a "claim" against the Debtor arising from the Debtor's obligation to pay the credit card bills and hold her harmless. See, In re Cheatham, 2009 WL 2827951, at *6 (Bankr. N.D. Ohio Sept. 2, 2009)("By virtue of that hold harmless language, Plaintiff was given a remedy for breach of performance

-15-

(i.e., were Defendant to fail to hold Plaintiff harmless) that would give rise to a right to payment.").

However, the stipulations obligating the Debtor to pay the monthly mortgage payments do not include an express hold harmless provision. Thus, the court may look to non-bankruptcy state law to determine whether or not Ms. Montaner has a remedy to enforce the Debtor's obligation to make the monthly mortgage payments. The Supreme Court of Puerto Rico has stated that stipulations contained in a consensual divorce petition constitute a settlement agreement between the former spouses. See Igaravidez v. Ricci, 147 D.P.R. 1 (P.R. Nov. 4, 1998). In Igaravidez v. Ricci, the Supreme Court of Puerto Rico held that the procedure to enforce these stipulations is to request the execution of the judgment as the stipulations are incorporated into the judicial proceedings[7]. In the instant case, this is exactly what Ms. Montaner was attempting to do in State Court before the Debtor filed this bankruptcy petition. Accordingly, the court finds that Ms. Montaner has at least contingent "claim" against the Debtor which arises out of the property settlement. The claim is contingent to the extent that she may be required to make these payments in the future[8].

### (D) Unsecured Status of Claim and Section 1328(a)(2)

Ms. Montaner argues that her claim is somehow secured by her pre-existing interest in the Real Property. A secured claim "is the claim of a creditor who holds a lien on property and has recourse against collateral for payment of the claim." Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual § 6:2 (5th ed.2015–1). Moreover, the term lien is defined as a "charge against or interest in property to secure payment

---

[7] The holding of the Puerto Rico Supreme Court was as follows: "Como señalamos anteriormente, el mecanismo que nuestro ordenamiento reconoce para hacer cumplir una estipulación contenida en una petición de divorcio por consentimiento mutuo, lo cual constituye una transacción judicial, es el de ejecución de la sentencia." 147 D.P.R. 1.

[8] The court notes that Ms. Montaner has not alleged, and from the record it does not appear, that she has made any mortgage or credit card payments. In addition, she has not alleged that either Banco Popular de Puerto Rico or any of the credit card companies have made attempts to collect the debt from her.

of a debt or performance of an obligation." 11 U.S.C. §101(a)(37). In the instant case, it is evident that Ms. Montaner does not hold a lien on the Real Property. Ms. Montaner is a co-owner and co-debtor on the mortgage loan and mortgage notes held by Banco Popular de Puerto Rico. The party who has a secured claim and holds a lien on the Real Property is Banco Popular de Puerto Rico. See proof of claims #7 and #11-2. Additionally, the State Court did not grant her a lien over the Real Property in the Judgment granting the Parties divorce petition. See Farrey v. Sanderfoot, 500 U.S. 291, 293 (1991) ("To secure this award, the decree provided that Farrey "shall have a lien against the real estate property of [Sanderfoot] for the total amount of money due her pursuant to this Order of the Court, i.e. $29,208.44, and the lien shall remain attached to the real estate property ... until the total amount of money is paid in full.").

Ms. Montaner relies on In re Donahue, 862 F.2d 259, 265 (10th Cir. 1988) and argues that the divorce judgment created an "equitable lien" in her favor. Nevertheless, this argument also fails. In In re Donahue the United States Court of Appeals for the Tenth Circuit held that the divorce decree granted the former spouse an "equitable lien or mortgage" and thus the former spouse's claim was secured. However, in that case the Court held that the divorce decree itself created an "equitable lien" noting that:

> "While the decree did not use the term "lien," the Property was awarded to Donahue "subject to ... the judgment to" Parker. The judgment to Parker was "payable on February 15, 1983, or ... the sale of the [P]roperty, or a conveyance or mortgage of the [P]roperty, whichever should occur first." Thus, it is clear that the divorce court intended the Property to secure the debt to Parker." In re Donahue, 862 F.2d at 265, n.9.

Moreover, the Court of Appeals indicated that "[i]n this case, it is clear that the Property was intended to be the source from which the debt to Parker would be paid." Id.

In the instant case, no such language is included in the divorce stipulations which were incorporated in to the Judgment. The Parties agreed that Ms. Montaner would cede her interest in

-17-

the Real Property to the Debtor and in exchange the Debtor agreed to undertake efforts to have the banks release her from the mortgage[9]. Therefore, the divorce decree did not grant Ms. Montaner a lien over the Real Property. As previously mentioned, she is a co-owner of the Real Property and co-debtor of the mortgages secured by the Real Property.

Accordingly, this court finds that Ms. Montaner holds a contingent unsecured claim against the Debtor, which amount cannot be determined by the court at this juncture. In addition, because her claim is unsecured it will be discharged pursuant to Section 1328(a)(2) if the Debtor obtains a discharge under Section 1328(a) upon completion of all Chapter 13 plan payments. Hence, Ms. Montaner's claim --the unpaid balance owed on the credit card bills and mortgages secured by the Real Property once the Debtor completes his chapter 13 plan--will be discharged.

## Conclusion

In light of the above, this court finds that Ms. Montaner has an undetermined, contingent, and unsecured claim against the Debtor arising from a property settlement, and an unsecured claim for the obligation relating to the payment of credit cards, both of which will be discharged pursuant to Section 1328(a)(2) if the Debtor obtains a discharge, as debts under Section 523(a)(15) are not excepted.

For the reasons stated herein, Ms. Montaner's *Motion for Summary Judgment is* (Docket No. 84) is hereby denied.

SO ORDERED.

In San Juan, Puerto Rico, this 13th day of January, 2017



Enrique S. Lamoutte
United States Bankruptcy Judge

---

[9] The stipulation reads as follows in Spanish: "La Peticionaria Ana Cristina Montaner Rodriguez cede y traspasa su participación en el referido inmueble al Peticionario, Wilfredo Enrique Arias Nussa, quien se compromete a realizar todas las gestiones pertinentes para que el acreedor hipotecario libere a la Peticionaria Ana Cristina Montaner Rodriguez de dicha deuda." (proof of claim #10-3, pp-17-18).